UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 22 CR 509-1 |
| v. | Judge Thomas M. Durkin |
| DENNIS MADDOX | |

## GOVERNMENT'S SENTENCING MEMORANDUM

During the peak of the 2021 holiday season, with a counterfeit United States Postal Service Arrow key in hand, defendant Dennis Maddox recruited others to steal mail from the general public so that he could rob others of cash, checks, and bank cards. At the time of this offense, defendant had had regular contact with the criminal justice system for decades, and had multiple times been convicted and given lengthy sentences for theft- and burglary-related offenses. A significant sentence is needed to protect the public, promote respect for the law, and deter defendant and others from committing further crimes. Accordingly, the government respectfully requests that the Court impose a sentence of 18 months' imprisonment.

## I. BACKGROUND

### A. Procedural History

On October 6, 2022, a grand jury returned an indictment charging defendant Dennis Maddox and co-defendant Jeanie Newman with unlawfully possessing a key suited to a lock adopted by the Postal Service, with the intent to unlawfully use that key, in violation of Title 18, United States Code, Section 1704. R. 1.

On October 20, 2023, defendant pleaded guilty pursuant to a plea declaration. R. 98–99. He is scheduled to be sentenced by this Court on February 6, 2024. R. 108.

**B.      Offense Conduct**

On or about the evening of December 22, 2021, defendant—on parole from a felony conviction in the Circuit Court of Cook County for stealing a van—had a counterfeit United States Postal Service (USPS) Arrow key. A vital tool for USPS mail carriers, Arrow keys allow USPS workers to deliver the mail by giving them the ability to unlock the locks and entry systems to entrance doors on nearly every apartment and office building throughout the City of Chicago, and to mail and collection boxes throughout the City.

That evening, during peak holiday season and with USPS volume surging, defendant formulated a plan to use his counterfeit Arrow key to steal money from the mail. Defendant intended to steal vast quantities of mail and keep any cash he stole. To maximize his profits, and because he did not know how to wash checks or manipulate bank cards, defendant also intended to sell to third parties any checks or bank cards he stole. Government's Version of the Offense (GVO), Exhibit 1.

To accomplish his objective, defendant enlisted others for his plan. He requested that Individual 1 drive him and co-defendant Jeanie Newman to some of the "better neighborhoods" in Chicago so that the group could steal mail. And to get Individual 1 to participate, he offered Individual 1 incentives: gas for Individual 1's car, and methamphetamine.

Individual 1 drove defendant and co-defendant Newman to the near South Side that night to execute defendant's plan. There, defendant used his working, counterfeit Arrow key to quickly open and empty six community mailboxes within a short time span—stealing over 250 pieces of mail from approximately 107 would-be USPS mail recipients during the holiday season.

Defendant was arrested shortly thereafter when police responded to calls from local residents who had observed defendant and his co-conspirators' theft of U.S. mail. Defendant later admitted to law enforcement that an unknown individual on the South Side of Chicago loans defendant counterfeit USPS Arrow keys, which he uses to steal mail. He admitted that he targets cash, checks and bank cards.

## II.      PRESENTENCE INVESTIGATION REPORT

### A.      Offense Level

#### 1.      The PSR Calculation

Pursuant to the 2023 Sentencing Guidelines Manual, the Probation Officer calculates the total offense level as follows (PSR ¶¶ 15–24):

| | |
|---|---|
| Base Offense Level<br>[§ 2B1.1(a)(2)] | 6 |
| 10 or More Victims<br>[§ 2B1.1(b)(2)(A)(i)] | +2 |
| Acceptance of Responsibility<br>[§ 3E1.1(a)] | -2 |
| **Total Offense Level** | 6 |

The government agrees with the calculation of the offense level stated in the PSR.

### 2. The Disputed Sentencing Enhancement Related to the Number of Victims (Guideline § 2B1.1(b)(2)(A)(i))

As noted in the PSR, the parties dispute the application of USSG § 2B1.1(b)(2)(A)(i). PSR ¶ 18. The government agrees with the Probation Officer that this enhancement applies.

### a. Defendant's Use of the Counterfeit Key, and The Resulting Harm, Are Relevant Conduct

Guideline § 1B1.3 delineates the conduct relevant to determining the applicable base offense level and specific offense characteristics for sentencing purposes. Most relevant here, Guideline § 1B1.3 provides that a sentencing court should consider: (1) "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense," (Guideline § 1B1.3(a)(1)(A)); and (2) "all harm that resulted from the acts and omissions specified in subsection[] (a)(1) . . . and all harm that was the object of such acts and omissions." Guideline § 1B1.3(a)(3).

Here, defendant has admitted that he "knowingly and unlawfully possessed a key suited to a lock adopted by the Postal Service . . . and did so with the intent unlawfully and improperly to use the same." R. 99 at 2. Defendant's particular use of the counterfeit USPS Arrow Key he has admitted to possessing is relevant as: (1) it amounts to an act committed or willfully caused by defendant that occurred during the commission of his unlawful possession of the counterfeit key, (Guideline

4

§ 1B1.3(a)(1)(A)); and (2) it illustrates the harm that "resulted" from his possession of the counterfeit key, and the harm that was the "object" of his actions. Guideline § 1B1.3(a)(3).

Defendant's use of the counterfeit key, which occurred during the unlawful possession for which he has been found guilty, and the harm that resulted from that use, are relevant conduct.

### b. Defendant's Relevant Conduct Resulted in Harm to More than 10 Victims

Guideline § 2B1.1(b)(2)(A)(i) increases the offense level by 2 levels if an offense "involved 10 or more victims." Application Note 4(C) defines the term "victim" for any case "in which undelivered United States mail was taken, or the taking of such item was an object of the offense, or in a case in which the stolen property received, transported, transferred, transmitted, or possessed was undelivered United States mail." In such cases, "victim" means: (1) any victim as defined in Application Note 1[1]; or (2) any person who was the intended recipient, or addressee, of the undelivered United States mail." Application Note 4(C)(i).

Here, the government identified approximately 107 people who were the intended recipients of the mail that defendant stole on December 22, 2021. *See* PSR ¶ 17–18. As a result, defendant's offense "involved more than 10 victims." *See* Guideline § 2B1.1(b)(2)(A)(i).

---

[1] Application Note 1 defines "victim" as: (A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense. "Person" includes individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies.

Defendant's offense level is properly enhanced by 2 offense levels, pursuant to Guideline § 2B1.1(b)(2)(A)(i), because he committed acts during the commission of the offense of conviction that resulted in more than 10 victims.

### B.    Criminal History Category

The government agrees with the PSR that defendant's criminal history merits 30 points and, as a result, his Criminal History Category is VI.[2]  PSR ¶¶ 28–50.

### C.    Advisory Guidelines Range

The government agrees with the PSR that, based upon a total offense level of 6 and criminal history category of VI, defendant's advisory guidelines imprisonment range is 12 to 18 months, in addition to any supervised release, fine, and restitution the Court may impose.  PSR ¶ 120.

## III.    SENTENCING RECOMMENDATION

The government seeks an 18-month sentence of imprisonment—the high end of the Guidelines range—which is warranted after considering the factors outlined in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense and the history and characteristics of defendant.  A sentence of 18 months' imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct.

---

[2] The government acknowledges that, in its Government's Version of the Offense, it had previously alleged defendant's criminal history merited 17 criminal history points, resulting in a Criminal History Category of VI.  On further review, the government agrees with the PSR that defendant's criminal history merits 30 points.

### A.      The Nature and Circumstances of the Offense

As to the charged conduct, defendant unlawfully obtained and possessed a counterfeit USPS Arrow key and intended to use that key to steal mail and money. In doing so, defendant formulated and executed a scheme to deprive others of gifts, formal and informal correspondence, and any other matter of mail—no matter how significant the content—to financially enrich himself. His selfish motivation evidences a total disregard for the wellbeing of others and could have had incalculable consequences had local authorities not intervened.

Defendant's confession to law enforcement on the night of this offense demonstrates he was very familiar with his process for obtaining and using counterfeit USPS Arrow keys. That night, he told law enforcement that he had an unknown source in Chicago who would loan defendant keys—with no rental fee—that he would use to steal mail. He also told law enforcement about a standard operating procedure that he used: steal the cash itself, and sell checks and bank cards to a third party. Defendant thus clearly articulated a regular course of action that demonstrates he was a seasoned actor here.

Consistent with his objective, defendant's charged conduct was calculated to maximize the opportunity for financial gain. Defendant specifically targeted "better neighborhoods" in Chicago, and did so at a time—peak holiday season—when it would be most likely that cash or cash-equivalent USPS mail would be sent through the mail. The timing and location of defendant's possession and use of this counterfeit USPS Arrow Key demonstrate the deliberate nature of defendant's crime.

7

Defendant's myopic focus on his financial gain evinced a blatant disregard for the wellbeing of others. Most obviously, defendant demonstrated no concern for the senders and recipients of the mail he intended to steal. And while defendant may have been focused on obtaining cash, his indiscriminate intent and method to steal vast quantities of mail before later filtering out the cash and cash-equivalent items would have deprived mail recipients of all manner of official and personal correspondence.

Related to this particular incident, defendant also showed little concern for the wellbeing of Individual 1. Defendant not only recruited Individual 1 to his scheme on December 22, 2021—thus exposing Individual 1 to potential criminal liability—he incentivized Individual 1 to participate by offering to distribute methamphetamine to him/her. Defendant's cavalier attitude towards what could happen to Individual 1—whether because of this criminal conduct or the use of methamphetamine— underscores the inherently selfish nature of his criminal conduct.

**B.    The History and Characteristics of the Defendant**

Defendant's background contains limited mitigating evidence. He grew up lower-middle class. PSR ¶ 73. His father suffered from alcoholism and abused drugs; his father would occasionally physically abuse defendant when his father was intoxicated, and would use narcotics in front of defendant. PSR ¶ 74. Likely as a result, defendant's exposure to and use of narcotics has been frequent and ongoing since his youth. He regularly used marijuana and methamphetamine before his arrest in this case and, according to defendant, his commission of the instant offense

was at least partly fueled by his drug addiction. PSR ¶¶ 96, 99, 101. To his credit, however, defendant has tested negative for illegal drugs on each urinalysis that pretrial services has administered since September 25, 2023. PSR ¶ 104. And it appears defendant may be taking steps to address his substance abuse issues. Sentencing Recommendation at 2.

Defendant satisfactorily completed high school and attended some college courses, but ultimately dropped out due to his inability to afford tuition. PSR ¶¶ 105–07. His subsequent work history is sporadic, and it appears he has not regularly held a job for over 7 years. PSR ¶¶ 109–15.

Despite the challenges defendant has faced, his criminal history reflects a man who has chosen—repeatedly—to violate the law. Of his 15 criminal convictions and sentences, seven relate to possessing narcotics, and six relate to theft or burglary.[3] Before he committed this offense, defendant had been given probation for a theft- or burglary-related offense—and later violated that probation. PSR ¶ 36. Later in his criminal career, defendant was given an imprisonment sentence of 5 years and multiple imprisonment sentences of 48 months for theft- or burglary-related offenses. *See* PSR ¶¶ 37, 43–45. None of these sentences deterred defendant from committing an additional burglary (PSR ¶ 46), or the instant offense.

---

[3] Defendant has one additional conviction and sentence, for theft in the Circuit Court of Cook County, Illinois, on June 2, 2022, that does not count as a "prior sentence" because the underlying conduct was part of the instant offense. *See* PSR ¶ 47. In addition, defendant has two prior sentences for theft-related offenses that are counted as a single sentence because there was no intervening arrest and the sentences were imposed on the same day. *See* PSR ¶¶43-44. If counted separately, defendant would have six criminal convictions related to theft or burglary.

Defendant's blasé attitude towards the consequences he might face is further demonstrated by the fact that, at the time he committed the instant offense, defendant was on parole from one of his 48-month prison sentences for having stolen a vehicle. *See* PSR ¶¶ 45, 49.

Beyond his convictions, defendant has had continuous contact with law enforcement since he was 17 years old. Since then, according to the Probation Officer, defendant has been arrested or cited by law enforcement approximately 38 times. Sentencing Recommendation at 2. Given defendant's frequent and oftentimes lengthy prior custodial sentences, this is a significant number of law enforcement interaction during his relatively limited time in broader society.

Ultimately, while defendant's upbringing appears to have had challenges, and his drug abuse and addiction may have contributed to the instant conviction, defendant's consistent criminal history demonstrates the need for deterrence. Quite simply, even as a 43-year-old man with over a dozen prior criminal convictions, defendant still has not gotten the message: theft is not acceptable and there will be consequences for choosing the wrong path.

### C. The Seriousness of the Offense and the Need to Promote Respect for the Law, Provide Just Punishment, and Afford Adequate Deterrence

Defendant's criminal history includes 16 adult criminal convictions, five violations of court-imposed supervision, and four cases involving parole violations. Sentencing Recommendation at 2. In short, his demonstrated behavior over decades shows he lacks respect for the law. His repeated and constant criminal violations

prove that past sentences imposed upon him—some of which dwarf what the United States seeks here—have done little to deter additional criminal conduct.

Because defendant's previous criminal convictions and sentences have apparently failed to deter his criminal conduct, the government here seeks an 18-month term of imprisonment—at the high end of the Guidelines range. Defendant has previously squandered far too many opportunities to merit any lesser amount of imprisonment.

## IV.    SUPERVISED RELEASE CONDITIONS

The government agrees with Probation's recommendation that the Court order a term of supervised release of three years. Probation's proposed conditions are warranted and necessary and will assist the Probation Officer with monitoring the defendant's conduct, condition, and compliance without being overly burdensome, which is important here to promote defendant's respect for the law and deter the defendant from future crimes. The conditions will also provide defendant with substance abuse treatment, which is appropriate considering defendant's long-running drug use.

## V.     Conclusion

For the reasons stated above, the government respectfully requests that the

Court sentence defendant to 18 months' imprisonment.

                              Respectfully submitted,

                              MORRIS PASQUAL
                              Acting United States Attorney


               By:    */s/ Kurt Siegal*_____
                              KURT SIEGAL
                              Assistant United States Attorney
                              219 S. Dearborn Street, Rm. 500
                              Chicago, Illinois 60604
                              (312) 886-1265